1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYAN PEASE,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>SAN DIEGO COUNTY SHERIFF<br>WILLIAM GORE., *et al*.,<br><br>　　　　　　　　　　Defendants. | Case No. 18-cv-01062-BAS-NLS<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT WILLIAM<br>GORE'S MOTION TO DISMISS**<br><br>**[ECF No. 4]** |

　　　　Before the Court is a motion to dismiss the Complaint filed by Defendant San Diego County Sheriff William Gore ("Sheriff Gore"). (ECF No. 4.) Plaintiff Bryan Pease opposes (ECF No. 8) and Defendant has replied (ECF No. 9). For the reasons herein, the Court grants in part and denies in part Sheriff Gore's motion to dismiss.

## BACKGROUND

　　　　This case is related to another case pending before this Court, *Orozco v. Zimmerman*, No. 17-cv-1230-BAS-NLS (S.D. Cal.). (ECF No. 1, Compl. ¶ 1.) Both cases stem from a May 27, 2016 rally held by then presidential candidate Donald Trump at the San Diego Convention Center. (Compl. ¶ 13; *see also Orozco*, ECF No. 38, Third Am. Compl. ("TAC") ¶ 1.) At the heart of both cases is the allegation that the San Diego Police Department ("SDPD") and the County of San Diego Sheriff's Department engaged in an "orchestrated, pre-planned suspension" of the

First Amendment "in the vicinity of the [] Convention Center" allegedly directed and implemented by certain SDPD and County officials and officers against various protestors.  (Compl. ¶¶ 1–2; *Orozco*, TAC ¶¶ 1–2.)  In *Orozco*, seven plaintiffs who were demonstrators allege that they were falsely arrested and/or detained.  (*Orozco* TAC ¶¶ 9–10.)  Plaintiff Bryan Pease represents the *Orozco* plaintiffs and brought the instant case to assert claims on his own behalf.  (*Id.* ¶ 10; Compl. ¶ 1.)

By way of brief background, the Trump rally linking both this case and *Orozco* "spurr[ed] large, day-long peaceful protests."  (Compl. ¶ 13; *Orozco*, TAC ¶ 59.)  Near the end of the day, "[m]inor scuffles between anti-Trump and pro-Trump demonstrators" occurred—"a few plastic water bottles were thrown back and forth, and people yelled at each other." (Comp. ¶ 13; *Orozco*, TAC ¶ 60.)  Allegedly, "[a]t some point, Defendants decided to declare the entire assembly unlawful pursuant to California Penal Code section 409."  (Compl. ¶ 15; *Orozco*, TAC ¶ 61.)  Sheriff's deputies allegedly "cordoned off Harbor Drive so that peaceful demonstrators could not leave" and "other Sheriff's deputies marched forward and forced the demonstrators to walk south on Harbor Drive."  (Compl. ¶ 16; *Orozco*, TAC ¶ 63.)  Thereafter, "[h]undreds of police and Sheriff's deputies in riot gear . . . march[ed] in military formation" from the Convention Center over the bridge into Barrio Logan, "arbitrarily arresting people" although "the crowd had largely dispersed and there were only about 20 peaceful demonstrators left."  (Compl. ¶ 17; *see also Orozco*, TAC ¶ 64.)  Sheriff Gore was allegedly "complicit in this unconstitutional action to shut down all protests, as he has final policymaking authority for the Sheriff's Department, which carried out an official policy when it participated in cordoning off the area so demonstrators were not free to leave, making arbitrary arrests[.]"  (Compl. ¶ 18.)

Several weeks after this Court granted Sheriff Gore's and the County's Rule 12(b)(6) motion to dismiss the Second Amended Complaint in *Orozco* and the *Orozco* plaintiffs filed a Third Amended Complaint, Plaintiff filed this suit on May

29, 2018 against Sheriff Gore, Sergeant Boudreau, Shelley Zimmerman, SDPD Officer Samuel Euler, SDPD Officer Tony Maraschiello, and the City of San Diego. (*Compare Davis v. Zimmerman*, No. 17-cv-1230-BAS-NLS, 2018 WL 1806101 (S.D. Cal. April 17, 2018) *and Orozco*, ECF No. 38, TAC *with* ECF No. 1.)

In this case, the Complaint alleges claims under 42 U.S.C. § 1983 against the City of San Diego and Sheriff Gore for violations of First, Fourth, and Eighth Amendments of the U.S. Constitution. (Compl. ¶¶ 19–25 (Section 1983 municipal liability allegations); *id.* ¶¶ 26–29 (First Amendment); *id.* ¶¶ 30–33 (Fourth Amendment); *id.* ¶¶ 34–35 (Eighth Amendment). Plaintiff sues all individual Defendants in their official capacity. (*Id.* ¶¶ 7–8, 9–11.) The Complaint requests damages and "a permanent injunction to prevent Defendants from continuing to enforce California Penal Code §§ 407–409 in which Defendants arrest individuals merely for being present at an assembly[.]" (Compl. at 7.) Defendants City of San Diego, Chief Zimmerman, and Officers Euler and Maraschiello have all answered the Complaint. (ECF No. 3.) Defendant Boudreau has neither moved to dismiss, nor answered the Complaint. The Court now turns to Sheriff Gore's pending motion to dismiss.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89 (2007). A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of

1    entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations

2    omitted). A pleading must contain "enough facts to state a claim to relief that is

3    plausible on its face." *Id*. at 570. If the "plaintiffs . . . have not nudged their claims

4    across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

5    **DISCUSSION**

6    **A.**     **Section 1983**

7    Sheriff Gore argues that the Complaint fails to state an actionable Section 1983

8    claim against him. Drawing upon this Court's dismissal order in *Orozco*, Sheriff

9    Gore argues that Plaintiff's allegation that Sheriff Gore was complicit in

10    unconstitutional conduct is insufficient to state a Section 1983 claim. (ECF No. 4-1

11    at 5 (citing *Orozco*, No. 17-cv-1230-BAS-NLS, ECF No. 37 at 9).) Sheriff Gore

12    additionally argues that Plaintiff has failed to allege deprivations of Plaintiff's First,

13    Fourth, and Eighth Amendment rights. The Court first addresses the nature of the

14    Complaint's Section 1983 allegations in relation to Sheriff Gore and then turns to the

15    sufficiency of the alleged violations of Plaintiff's constitutional rights.

16    **1.**     **Official Capacity Suit Against County Official and *Monell* Claim**

17    Plaintiff sues Sheriff Gore in his official capacity—not in his personal capacity.

18    (Compl. ¶ 7.) Official-capacity suits represent a means to plead an action against an

19    entity of which an officer is an agent. *Monell v. New York City Dept. of Social Servs.*,

20    436 U.S. 658, 690, n. 55 (1978). "[W]hen both an officer and the local government

21    entity are named in a lawsuit and the officer is named in official capacity only, the

22    officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F. Supp.

23    202, 203 (C.D. Cal. 1997) (citing *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996

24    (N.D.Cal.1996). "If only the official-capacity officer is named, it would be proper

25    for the Court upon request to dismiss the officer and substitute instead the local

26    government entity as the correct defendant." *Id.* at 204.

27    Plaintiff has not sued the County of San Diego, but rather has sued San Diego

28    County Sheriff Gore in his official capacity. Sheriff Gore does not expressly request

that the Court dismiss him and substitute the County of San Diego. The Court thus treats the official capacity claims against Sheriff Gore as claims against the County of San Diego.

Plaintiff seeks to impose municipal liability against Sheriff Gore in his official capacity—and thus effectively on the County—pursuant to *Monell v. New York City Dept. of Social Service*, 436 U.S. 658 (1978) for alleged constitutional violations. (Compl. ¶¶ 20, 23–25.) A municipality like the County cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). Rather, the local government unit "itself must cause the constitutional deprivation." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932 (1993).

To maintain a Section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691–694; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). There are three ways to show a municipal policy or custom: (1) by showing "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *Lopez v. Cty. of L.A.*, No. CV 15-01745 MMM (MANx), 2015 WL

3913263, at \*5–6 (C.D. Cal. June 25, 2015).

Contrary to Sheriff Gore's assertion that he—and, in effect, the County—must be dismissed, the Complaint does not possess the deficiencies of the Second Amended Complaint in *Orozco*. Although Sheriff Gore refers to the allegation that he was "complicit" in the unconstitutional conduct to argue for dismissal, the Court's *Orozco* analysis on which Sheriff Gore focuses concerned direct liability against him—not municipal liability stemming from an alleged policy. (*See Orozco*, ECF No. 37 at 9.) The Court did dismiss the municipal liability claim in *Orozco* because the plaintiffs failed to provide facts regarding final policymaking authority, but the Court granted leave to amend. (*Id.* at 6–7.)

The Complaint in the present case contains allegations which state a *Monell* claim based on the "decision of a person with 'final policymaking authority.'" (Compl. ¶ 20.) Sheriff Gore is alleged to have acted with final policymaking authority for the County of San Diego, as provided by the San Diego County of Board Supervisors. (*Id.* ¶ 24.) He is alleged to have ordered Sheriff's deputies to engage in the alleged conduct to violate Plaintiff's First and Fourth Amendment rights, which Plaintiff alleges is further reflected by the "largescale [sic] nature of the operation and the fact that hundreds of Sheriff's deputies were acting in formation[.]" (*Id.* ¶ 25.) Sheriff Gore does not challenge the sufficiency of any of these allegations as part of setting forth a *Monell* claim for municipal liability.

In addition, the Court observes that these allegations are virtually identical to the allegations of *Monell* liability against the County and Sheriff Gore in the *Orozco* Third Amended Complaint, which were amended in light of this Court's dismissal order in that case. (*See Orozco*, TAC ¶¶ 68–69, 71–73.) Sheriff Gore and the County did not move to dismiss these amended *Monell* liability allegations in *Orozco*. (*Orozco*, ECF No. 42.) Accordingly, the Court declines to dismiss Plaintiff's *Monell* claim against Sheriff Gore in his official capacity—treated as a claim against the County of San Diego—in this case. The remaining issue is whether Plaintiff has

plausibly alleged such deprivations of his constitutional rights as a result of an alleged policy.

### 2. Alleged Deprivations of Constitutional Rights

To state a Section 1983 claim, a plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendant's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *see West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges violations of the First, Fourth, and Eighth Amendments of the U.S. Constitution as a result of conduct by municipal actors. (Compl. ¶¶ 26–29 (First Amendment); *id.* ¶¶ 30–33 (Fourth Amendment); *id.* ¶¶ 34–35 (Eighth Amendment).) Sheriff Gore expressly challenges in his initial motion to dismiss whether Plaintiff has plausibly alleged violations of the First and Eighth Amendments. (ECF No. 4-1 at 6–7.) In responding to Plaintiff's opposition to dismissal, Sheriff Gore further expressly challenges Plaintiff's Fourth Amendment claim. (ECF No. 9 at 2.) The Court considers the alleged deprivation of these constitutional rights.

### a. First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble[.]" U.S. Const., amend. I. The First Amendment is applicable to the states and local governments through the Due Process Clause of the Fourteenth Amendment. *Menotti v. City of Seattle*, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005) (citing *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937) (some citations omitted)).

To state a claim for First Amendment violation, a plaintiff must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th

Cir. 2006). When a plaintiff asserts a Section 1983 claim based on the First Amendment, "a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alterations in original) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)).

Focusing on the "peaceably" language of the First Amendment, Sheriff Gore argues that Plaintiff cannot state a deprivation of his First Amendment rights because the assembly was not peaceful. (ECF No. 4-1 at 6.) Emphasizing the Complaint's allegations that there were "minor scuffles" in which "a few plastic water bottles were thrown back and forth, and people yelled at each other," Sheriff Gore argues that the entire assembly was not peaceful and therefore Plaintiff cannot claim any First Amendment right. (*Id.*; Compl. ¶ 14.) The Court readily rejects Sheriff Gore's sole argument for dismissal.

The basis of Plaintiff's First Amendment claim is that the Defendants "conspired to and did violate the First Amendment rights of Plaintiff by actively preventing Plaintiff from peacefully assembling anywhere in the vicinity of the San Diego Convention Center" and that "[d]espite the fact that Plaintiff continued moving south as ordered, Defendants arrested [him] anyway, thereby completely depriving him of any First Amendment rights." (Compl ¶¶ 27–28.) The Complaint specifically alleges that demonstrators—including Plaintiff—were in fact peaceful and that Sheriff's deputies prevented peaceful demonstrators from leaving the area that Defendants declared an unlawful assembly as part of the alleged policy being challenged. (*Id.* ¶¶ 16–17.) Even if other persons engaged in scuffles and threw some bottles at each other and even if such conduct falls outside the First Amendment's protections, the Complaint alleges that Plaintiff was not one of these persons. The Court must take these allegations as true at this stage. The Complaint further causally links the alleged deprivation of Plaintiff's First Amendment rights with the alleged

orchestrated plan directed by Sheriff Gore and other Defendants in connection with the rally. Accordingly, the Court denies Sheriff Gore's motion to dismiss the First Amendment claim.

### b.    Eighth Amendment

The Eighth Amendment provides that "[e]xcessive bail shall not required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. The Complaint alleges a violation of the Eighth Amendment because "[a]fter Plaintiff's false arrest, Sheriff William Gore and Sheriff's Sergeant Boudreau kept Plaintiff confined first in a bus for hours, and then in the County Jail for over 10 hours." (Compl. ¶ 35.) Plaintiff further alleges that "[t]he cell in which [he] was kept was crowded, filthy, and contained people who were clearly in need of medical help passed out on the floor." (*Id.*) Plaintiff claims that "[t]he conditions in which [he] was kept constitute cruel and unusual punishment in violation of the Eighth Amendment." (*Id.*)

Sheriff Gore raises two arguments for dismissal of the Eighth Amendment claim, neither of which is persuasive. First, Sheriff Gore argues that the Eighth Amendment claim must be dismissed because "[i]f Eighth Amendment violations resulted from arrestees being held in a bus and jail cell for about 10 hours, countless arrestees could make such claims." (ECF No. 4-1 at 6.) Sheriff Gore provides no authority supporting the notion that an Eighth Amendment claim must be dismissed simply because other persons in similar circumstances could also assert the claim. The Court rejects this argument.

Second, Sheriff Gore argues that jurisdictions providing probable cause determinations within 48 hours of an arrest are immune from systemic challenges. (*Id.* (citing *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)). Relatedly, Sheriff Gore asserts that the detention time was necessary to permit the County to differentiate between a participant in or a bystander of "an assembly that was violent or posed a clear and present danger of immanent [sic] violence." (ECF No. 4-1 at 6–

7; ECF No. 9 at 2.)  The Court rejects these arguments as well.

Sheriff Gore's argument for dismissal bears no relation to the actual substance of Plaintiff's Eighth Amendment claim.  Sheriff Gore's argument inaptly focuses on the time period within which law enforcement must generally have a judicial determination of probable cause in order to satisfy *the Fourth Amendment* when a warrantless arrest has occurred.  *See Cty. of Riverside*, 500 U.S. at 56 (1991) ("Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. . . we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement" of *Gerstein v. Pugh*, 420 U.S. 103 (1975) for warrantless arrests).  Plaintiff's Eighth Amendment claim does not concern the time he was detained, but rather the conditions of his confinement.  Furthermore, Sheriff Gore cites no case law for the proposition that compliance with the Fourth Amendment for a warrantless arrest claim immunizes law enforcement from claims arising under the Eighth Amendment for conditions of confinement.

Although Sheriff Gore's dismissal arguments are unavailing, the Court finds that Plaintiff's Eighth Amendment claim must be dismissed for obvious deficiencies. "Eighth Amendment scrutiny applies to claims of cruel and unusual punishment regarding conditions of confinement asserted *by convicted prisoners*."  *Munoz v. Kolender*, 208 F. Supp. 2d 1125, 1145 (S.D. Cal. 2002) (emphasis added). "The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Plaintiff does not allege that he faced alleged unconstitutional conditions of confinement as a convicted prisoner.  Plaintiff's invocation of the Eight Amendment is therefore misplaced.

Conditions of confinement claims raised by detainees who are not adjudicated criminals are analyzed under the Fourteenth Amendment's substantive Due Process

Clause, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Munoz*, 208 F. Supp. 2d at 1146. "Under the Due Process Clause, detainees have a right against jail conditions or restrictions that 'amount to punishment.'" *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (citing *Bell*, 441 U.S. at 537). Claims brought by pre-trial detainees for conditions of confinement are evaluated under the objectively unreasonable standard. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016) (en banc). In determining whether a defendant's conduct is "objectively unreasonable," courts should carefully consider the "facts and circumstances of each particular case." *Id*. at 1071 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

The most Plaintiff alleges is that he was briefly kept in a cell that was crowded and filthy and had other people—not the Plaintiff—who needed medical help. Plaintiff provides no case law showing that these conditions constitute punishment in violation of the Fourteenth Amendment. The Court finds that, as a matter of law, Plaintiff's allegations do not show that his conditions of confinement were so objectively unreasonable that Plaintiff was subjected to punishment in violation of the Fourteenth Amendment's Due Process Clause. Accordingly, the Court dismisses Plaintiff's conditions of confinement claim with prejudice, including under both the Eighth Amendment and Fourteenth Amendment.

### c. Fourth Amendment

The Complaint alleges a Fourth Amendment violation on the ground that Plaintiff was arrested by SDPD officers Euler and Maraschiello "without probable cause while he was walking backwards filming the advancing riot police . . . not blocking any traffic nor violating any laws." (Compl. ¶ 31.) Plaintiff further alleges that Sheriff Gore "ordered and/or ratified the unlawful arrest and over 10-hour jailing

of Plaintiff." (*Id.* ¶ 32.)

A claim for unlawful arrest is cognizable under Section 1983 as a violation of the Fourth Amendment if the arrest was without probable cause or other justification. *See Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993). To state a Fourth Amendment claim for unlawful arrest, a plaintiff must allege facts showing that "the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964-965 (9th Cir. 2001). There is probable cause when, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964–965 (9th Cir. 2001) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

Although Sheriff Gore did not expressly move to dismiss Plaintiff's Fourth Amendment claim in the opening motion to dismiss brief, Sheriff Gore argues in reply that the claim must be dismissed. (ECF No. 9 at 2.) Sheriff Gore's failure to move to dismiss the claim in his opening motion is a sufficient basis not to subject Plaintiff's Fourth Amendment claim to scrutiny at this stage. But even considering Sheriff Gore's argument in reply that "the relevant basis for arrest is failure to comply with warnings to disburse" (ECF No. 9 at 2), it is unavailing. The Complaint alleges that Plaintiff was peaceful and despite obeying orders, he was arrested as part of the orchestrated plan to suspend First Amendment rights and arbitrarily arrest persons. (Compl. ¶¶ 28, 31.) These allegations are sufficient to state a violation of the Fourth Amendment based on lack of probable cause to arrest Plaintiff. The Court declines to dismiss Plaintiff's Fourth Amendment claim.

**B.    Standing for Prospective Injunctive Relief**

Plaintiff seeks "a permanent injunction to prevent Defendants from continuing to enforce California Penal Code §§ 407–409 in which Defendants arrest individuals merely for being present at an assembly[.]" Sheriff Gore argues that Plaintiff lacks

standing to seek this prospective injunctive relief. (ECF No. 4-1 at 7.) The Court agrees.

To have standing for prospective injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that he will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The "threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations omitted). The Supreme Court has sometimes framed the injury requirement as a "substantial risk" that the harm will occur. *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. at 1150 n.5). The alleged threat cannot be "conjectural" or "hypothetical," *Lyons*, 461 U.S. at 101-02, but must be a "credible threat of future injury," *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 528–29 (9th Cir. 1989) (quotation marks and citations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1080 (N.D. Cal. 2013) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A plaintiff "must demonstrate that [he is] *realistically threatened by a repetition of the violation*" at issue. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quotation marks and citations omitted, emphasis in original).

In this case, Plaintiff alleges is that he was subjected to an alleged policy concerning a single rally on May 27, 2017, pursuant to which his First and Fourth Amendment rights were violated. The Complaint does not contain allegations which connect Defendants' alleged conduct to anything beyond the events of that day, such as an overarching policy of the County regarding implementation of California Penal Code §§ 407–409. Plaintiff's past exposure to an alleged illegal course of conduct is an insufficient basis for Plaintiff to seek the prospective injunctive relief he seeks. Accordingly, the Court dismisses Plaintiff's request for such injunctive relief.

# CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Sheriff Gore's motion to dismiss.  (ECF No. 4.)  The Court hereby:

1.    **DISMISSES WITH PREJUDICE** Plaintiff's Eighth Amendment claim;

2.    **DISMISSES** Plaintiff's request for prospective injunctive relief for lack of standing; and

3.    Otherwise **DENIES** Sheriff Gore's motion to dismiss.  Sheriff Gore shall **ANSWER** the Complaint **no later than November 1, 2018**.

**IT IS SO ORDERED.**

Hon. Cynthia Bashant
United States District Judge

**DATED:  October 12, 2018**

– 14 –

18cv1062